United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Ervin B. Evans and
Melissa G. Johnson-Evans,                                           Case No. 06-40957-R
                Debtors.                                     Chapter 13
_____/

Opinion Regarding Ford Motor Credit's Objection to Chapter 13 Plan

On December 23, 2004, Ervin Evans entered into a contract with Ford Motor Credit Company to finance the purchase of a 2005 Ford Escape. Evans agreed to have the weekly payment of $185.82 deducted directly from his paycheck from Ford Motor Company. However, shortly after financing the vehicle, Evans began to experience intermittent lay-offs from his employment.

On January 30, 2006, Evans and his wife filed a chapter 13 bankruptcy petition. The initial chapter 13 plan provided that Evans would retain the Ford Escape and continue to make direct payments to Ford, while playing 100% over 36 months to other creditors. However, Evans soon realized that he could not afford to keep the Escape. On April 28, 2006, Evans filed an amended plan proposing to surrender the Ford Escape to Ford Motor Credit in full satisfaction of the debt. Ford Motor Credit objected to confirmation of the plan, asserting that Evans may not surrender the vehicle in full satisfaction of the debt. Rather, Ford Motor Credit asserts that it is entitled to either payment in full of the debt owing on the date of the filing or an unsecured claim for any deficiency balance due and owing after the sale of the vehicle.

For the reasons stated below, the Court concludes that the bankruptcy code does permit the debtor to surrender the vehicle in full satisfaction of the debt and that therefore Ford Motor Credit's

objection should be overruled.

I.

Section 1325, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, requires the court to confirm a plan if certain conditions are met.  Treatment of allowed secured claims is found in § 1325(a)(5), which provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if-
> . . .
> (5) with respect to each allowed secured claim provided for by the plan-
> (A) the holder of such claim has accepted the plan;
> (B)  (i) the plan provides that-
> (I) the holder of such claim retain the lien securing such claim until the earlier of-
> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
> (bb) discharge under section 1328; and
> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
> (iii) if-
> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
> (C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5).

Following subsection (9) of § 1325(a), there appears a paragraph that has come to be known as the "hanging paragraph," which states:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Section 506 ordinarily permits a debtor to bifurcate a secured creditor's claim into secured and unsecured portions, based on the value of the collateral. 11 U.S.C. § 506(a)(1). Thus, courts have held that bifurcation of claims held by so-called "910 creditors" is not permitted and that a claim of a 910 creditor must be treated as fully secured in a plan. *See In re Robinson*, 338 B.R. 70 (Bankr. W.D. Mo. 2006).

Only a few courts have considered the effect of the hanging paragraph when a debtor proposes to surrender a vehicle pursuant to § 1325(a)(5). The parties in the present case agree that Ford Motor Credit is a 910 creditor. As noted, Evans' amended plan proposes to surrender the vehicle in full satisfaction of the debt.

II.

Evans asserts that he may surrender the vehicle in full satisfaction of the debt pursuant to § 1325(a)(5)(C) and that the hanging paragraph prevents Ford Motor Credit from asserting a deficiency claim, if there is one after the vehicle is sold.

On the other hand, Ford Motor Credit argues that the hanging paragraph serves to ensure that it will be paid the entire amount of its claim whether the debt is paid through the plan or the collateral is surrendered.

The starting point deciding the issue is the statutory language itself. *United States v. Ron Pair Enters.*, 489 U.S. 235, 109 S. Ct. 1026 (1989). If the statute is unambiguous, there is no need for the Court to inquire beyond the plain language of the statute. *Id*. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.'" *Id*. *See also First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 471 (B.A.P. 6th Cir. 1998).

The great majority of decisions on point have found that the language of the hanging paragraph is unambiguous. *See In re Osborn*, __ B.R. __, 2006 WL 2457933 (Bankr. W.D. Mo. 2006); *In re Sparks*, 346 B.R.767, (Bankr. S.D. Ohio 2006); *In re Long*, __ B.R. __, 2006 WL 2090246 (Bankr. E.D. Tenn. 2006); *In re Payne*, __ B.R. __, 2006 WL 2289371 (Bankr. S.D. Ohio 2006); *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006). *But see In re Duke*, 345 B.R. 806, 809 (Bankr. W.D. Ky. 2006)(finding the hanging paragraph ambiguous).

In *Osborn*, __ B.R. at __, 2006 WL 2457933 at * 3, the court stated:

> The language of the hanging paragraph is clear. It provides that "[f]or purposes of paragraph (5), section 506 shall not apply" to a secured claim if the creditor is a hanging paragraph creditor. There is no ambiguity in this provision: if you are a hanging paragraph creditor, § 506 does not apply to your claim, and a plan cannot provide for bifurcation of it. . . . [T]his plain language does not differentiate, in any way, between the options provided in paragraphs (B) and (C) of § 1325(a)(5). Thus, in order to prevail, [a creditor] must show that literal application would either be contrary to congressional intent or would produce an absurd result.

Even if it were appropriate to resort to legislative history here, it would not help the creditor. In several cases, creditors have argued that "given Congress' intent to enhance the rights of hanging paragraph creditors by preventing bifurcation when the debtor retains the collateral, Congress could not have intended to shortchange these creditors when debtors surrender the collateral." *Id.* However, the majority of courts have rejected this argument.

In *Ezell*, the court thoroughly reviewed the legislative history on this issue and concluded that the "statements of Congressional intent . . . basically mirror the statutory language." *Ezell*, 338 B.R. at 341. Therefore, the *Ezell* court held, "The court has no choice but to interpret the Hanging Paragraph as written, i.e., that it applies to both Revised § 1325(a)(5)(B) and (C)." *Id.*

In *Osborn*, __ B.R. at __, 2006 WL 2457933 at *3, the court stated:

> In addition, the literal application of the statutory language does not result in an absurd outcome. "A result will only be deemed absurd if it is 'unthinkable, bizarre, or demonstrably at odds with the intentions of its drafters.' As discussed above, literal application is not demonstrably at odds with Congress' intent; and it is entirely logical that, if a creditor is to be deemed fully secured for one purpose, it should be fully secured for other purposes.

*Id.* (footnotes omitted).

The majority of cases on point conclude that the hanging paragraph prevents bifurcation of the secured creditor's claim upon surrender of collateral pursuant to § 1325(a)(5)(C). Therefore, when a debtor surrenders collateral pursuant to § 1325(a)(5)(C), the creditor is not entitled to a deficiency claim. Rather, surrender of the vehicle fully satisfies the debt.

It appears that there is only one contrary decision on point. In *Duke*, the court held that the hanging paragraph is ambiguous. Relying on the legislative history, the court found that "[t]he only

5

clear intent discerned from the legislative history on the hanging paragraph is that Congress intended to provide more protection to creditors with purchase money security interests." *Id*. at 809. Additionally, the court held that "[i]f Congress had intended to enact what would essentially be an 'anti-deficiency' provision, it would have made its intentions very clear in the statute." *Id*. Although the court held that the hanging paragraph prevents bifurcation of a 910 creditor's claim into secured and unsecured parts, it ruled that "surrender of a vehicle meeting the requirements of the 'hanging paragraph' does not result in a full satisfaction of the Creditors' claims, leaving them whatever state law remedies are available to them, including pursuit of a deficiency as an unsecured claim during the Chapter 13 proceeding." *Id*.

The Court is not persuaded by the reasoning of *Duke*. Rather, the Court agrees with the majority of courts to consider this issue. Allowing a creditor to pursue a deficiency claim following surrender of collateral pursuant to § 1325 would in all practical effect bifurcate the secured creditor's claim, in violation of the plain meaning of the hanging paragraph.

Nothing in the statute as amended states that a 910 creditor's claim is fully secured for all purposes. Rather all Congress did was to eliminate the § 506 bifurcation of such claims. Therefore, the Court rejects Ford Motor Credit's argument that Congress intended to give it a fully secured claim and that therefore after surrender and sale of the vehicle, it is entitled to a secured claim for the deficiency balance. There is simply no basis in the statute for such a result.

Accordingly, Evans may surrender the vehicle in full satisfaction of Ford Motor Credit's claim. Ford Motor Credit's objection to confirmation is overruled.

FOR PUBLICATION

6

06-40957-swr    Doc 61    Filed 09/13/06    Entered 09/13/06 16:02:10    Page 6 of 7

**Entered: September 13, 2006**

                                                          /s/ **Steven Rhodes**
                                                        **Steven Rhodes**
                                                        **Chief Bankruptcy Judge**